

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-1-1995

# Dade v North American Philips

Precedential or Non-Precedential:

Docket 94-5546

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Dade v North American Philips" (1995). *1995 Decisions.* Paper 283.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/283

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NO. 94-5546


JAMES F. DADE; JEROME A. BUDDE, JR.,
Individually and as the Class Representatives
of all Persons Similarly Situated

Appellants

v.

NORTH AMERICAN PHILIPS CORPORATION, as a Corporate Entity
and as Plan Administrator of the Co-Defendant Pension Plan;
PHILIPS ELECTRONICS NORTH AMERICAN CORPORATION;
THE NORTH AMERICAN PHILIPS CORPORATION PENSION PLAN FOR
SALARIED EMPLOYEES


On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 93-cv-05016)


Argued June 13, 1995

BEFORE:  STAPLETON, McKEE and SEITZ, <u>Circuit Judges</u>

(Opinion Filed  November 1, 1995)


David Tykulsker
Ball, Livingston & Tykulsker
108 Washington Street
Newark, NJ 07102
        and
John C. Theisen (Argued)
John T. Menzie
Gallucci, Hopkins & Theisen
229 West Berry Street, Suite 400
P.O. Box 12663
Fort Wayne, IN 46864-2663
        Attorneys for Appellants


2

Michael J. Dell (Argued)
Kramer, Levin, Naftalis,
 Nessen, Kamin & Frankel
919 Third Avenue
New York, NY 10022
        Attorneys for Appellees

Fredric S. Singerman
Christopher A. Weals
Seyfarth, Shaw, Fairweather &
 Geraldson
815 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006-4004
        and
Of Counsel:
Stephen A. Bokat
Robin S. Conrad
Mona C. Zeiberg
National Chamber Litigation
 Center, Inc.
1615 H. Street, N.W.
Washington, D.C. 20062
        Attorneys for Amicus Curiae
        Chamber of Commerce of the
        United States of America

John M. Vine
Jay T. Smith
Covington & Burling
1201 Pennsylvania Avenue, N.W.
P.O. Box 7566
Washington, D.C. 20044
        Attorneys for Amicus Curiae
        The ERISA Industry Committee

OPINION OF THE COURT

STAPLETON, Circuit Judge:

The issue presented is whether § 204(g) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1054(g),

3

requires an employer that sells a business but retains the pension plan covering the employees of that business to credit service with the purchaser when determining the eligibility of those employees for an early retirement benefit subsidy. Plaintiffs James Dade, Jerome Budde, Jr., and the class they purport to represent sued to force the North American Philips Corporation ("Philips"), their former employer, to comply with this alleged requirement. The district court held that ERISA does not impose such a requirement and dismissed the claims of plaintiffs for failure to state a claim under Fed. R. Civ. P. 12(b)(6). We will affirm.

I.

This dispute arises in connection with Philips' sale of the assets of its Magnavox Electronic Systems Company ("Magnavox") division to MESC Electronics Systems, Inc. ("MESCESI"). The relevant facts are not in dispute. Plaintiffs were employed by Magnavox on October 22, 1993, when the sale closed. Until the sale, plaintiffs participated in the Philips Electronics North America Corporation Pension Plan for Salaried Employees (the "Philips Plan" or the "Plan").

Under the terms of the Plan, sixty-five is the normal retirement age. However, participants who are at least fifty-five years old can elect to retire earlier. Such early retirees receive benefits reduced by 0.3% for each month their retirement precedes the normal retirement age. Under the Plan's "Rule of 85," early retirement benefits will not be reduced if the sum of

4

the participant's age and years of eligible service at retirement is at least eighty-five. The Plan defines eligible service as service with Philips, an affiliate of Philips, or any other company that has adopted the Plan.

Philips notified the plaintiffs of the impending sale of Magnavox and of the sale's effects on their retirement benefits. After the sale, Philips would remain the sponsor of the Plan and there would be no transfer of Plan assets or liabilities. While the plaintiffs would cease to be Philips' employees at the time of the closing, they would retain their rights under the Plan. Moreover, the Plan would be amended in two respects. All participants' accrued retirement benefits would become 100% vested when the sale closed and Magnavox employees continuing with MESCESI would be entitled to credit for up to one year of additional service with MESCESI towards the Philips Plan's Rule of 85 requirements. No credit would be given for any subsequent service with MESCESI.

After the sale, the plaintiffs continued to work for MESCESI in the same jobs they held with Magnavox. They did not satisfy the Rule of 85 requirements when the sale closed, nor could they do so even with credit for an additional year of service with MESCESI. Plaintiff Budde's age and eligible service summed to eighty-five, but he was not yet fifty-five years old, and would not turn fifty-five by October 1994. Plaintiff Dade did not have sufficient eligible service.

II.

5

The district court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132. Our jurisdiction over this appeal rests on 28 U.S.C. § 1291. We exercise plenary review over the district court's order dismissing plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6). Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993).

## III.

Plaintiffs' complaint asserts that both ERISA and the terms of the Plan require Philips to give plaintiffs credit for all of their service with MESCESI for the purpose of satisfying the Rule of 85. The district court was correct in holding that neither ERISA nor the terms of the Plan require that Philips give this credit.

### A. The Plan

While plaintiffs insist that Philips breached the Plan, their supporting argument before us rests squarely on two provisions of the Plan that incorporate the "applicable law": Section 4.2.3, which requires the Plan to give credit for service with a successor employer "to the extent required by law," and Section 13.4, which authorizes amendments to the Plan in order to "comply with any other provision of applicable law." Since the "applicable law" to which plaintiffs point is § 204(g) of ERISA, it necessarily follows that the sole issue presented in this appeal is whether § 204(g) requires credit for the plaintiffs'

6

service with MESCESI. It is nevertheless important to view the statutory issue in the context of the provisions of the Plan.

The unambiguous terms of the Plan do not require Rule of 85 credit for service with MESCESI. Section 5.7 of the Plan sets out the terms for early retirement subsidies. A participant's right to an early retirement subsidy is based on the participant's age and years of "Eligibility Service." "Eligibility Service" is defined as the "number of years and months of employees' Periods of Service." "Period of Service" is in turn defined as the period running from an employee's "Employment Commencement Date" (defined in Section 1.2.25 as the day on which he performs his first hour of paid work for an Employer or Affiliate) through an applicable "Severance Date." Finally, "Severance Date" is defined for relevant purposes as the "earliest of: the date on which an employee quits, retires, is discharged or dies; or the first anniversary of the first date of a period in which an employee remains absent from service (with or without pay) with an Employer or Affiliate for any [other] reason." Plan § 1.2.53 (A. 57). The Plan defines "Employer" as Philips or any other entity that has adopted the Plan with the approval of the Pension Committee, § 1.2.24 (A. 45), and "Affiliate" as an entity owned by or part of the controlled group of an Employer. § 1.2.3 (A. 38). MESCESI has not adopted the Plan and is not an affiliate of Philips.

Section 4.2.3 expressly excludes from the definition of "Period of Service" time spent working for any entity that is not yet or is no longer an Employer or Affiliate:

7

> In no event shall a Period of Service include any period of service with a corporation or other entity (a) prior to the date it became an Employer (or the date it became an Affiliate, if earlier) or (b) after it ceases to be an Employer or Affiliate except to the extent required by law, or to the extent determined by the Pension Committee in its discretion exercised in a manner that does not discriminate in favor of highly paid employees.

(A. 73.) Since the parties agree that the Pension Committee did not exercise its discretion to credit service with MESCESI after the first year, we turn to the effect of § 204(g) of ERISA.

## B. The Requirements of ERISA

ERISA does not mandate the creation of pension plans. Nor, with exceptions not here relevant, does it dictate the benefits to be afforded once a decision is made to create one. Hlinka v. Bethlehem Steel Corp., 863 F.2d 279, 283 (3d Cir. 1988); see also H.R. Rep. No. 807, 93d Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 4670, 4677. "ERISA is not a direction to employers as to what benefits to grant their employees." Hlinka, 863 F.2d at 283. Philips was thus at liberty to define the early retirement benefit in any way it chose, including a stipulation that only service to Philips or an affiliate would be credited towards the Rule of 85 requirement. Plaintiffs do not contend otherwise. Accordingly, we are required to enforce the Plan as written unless we can find a provision of ERISA that contains a contrary directive. The only candidate identified by the plaintiffs is § 204(g).

8

Section 204(g) of ERISA prohibits an employer from decreasing a participant's accrued benefits by plan amendment. Prior to 1984, no protection was given to early retirement benefits because they were not considered to be accrued benefits. Bencivenga v. Western Pa. Teamsters and Employers Pension Fund, 763 F.2d 574, 577 (3d Cir. 1985). In 1984, however, Congress amended ERISA § 204(g) to provide protection for early retirement benefits. Retirement Equity Act of 1984 ("REA"), Pub. L. No. 98-397, § 301(a)(2), 98 Stat. 1450-51. Section 204(g) as amended provides in relevant part:

> (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . .
> (2) For purposes of paragraph (1), a plan amendment which has the effect of--
>> (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations) . . .
>
> with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy. . . .[1]

After 1984, a plan sponsor could prospectively eliminate an early retirement benefit by amendment, but under § 204(g) the amendment could not adversely affect the early retirement benefit of a plan

---

[1] Rule of 85 benefits are considered early retirement subsidies because "more is provided . . . than any reasonable actuarial equivalent of the plan's normal retirement benefit." Stephen R. Bruce, Pension Claims Rights and Obligations, 285 (1993); see Ashenbaugh v. Crucible, Inc., 854 F.2d 1516, 1521 n.6, 1528 n.12 (3d Cir. 1988), cert. denied, 490 U.S. 1105 (1989).

participant who satisfied the pre-amendment conditions for the benefit either before or after the amendment. Thus, if Philips had adopted such an amendment, it would have had to allow those employees who remained in its employ after the amendment to "grow into" the benefit by providing post-amendment service to Philips or an affiliate of Philips.

Section 204(g) is not applicable under the facts of this case because there has been no amendment of the Plan that reduced a benefit, accrued or otherwise. The only amendment to the Plan was one increasing the early retirement benefit by expanding the universe of participants who could qualify for it. While plaintiffs insist that Philips' stated position, denying early retirement benefits to Dade, Budde and the others is "tantamount to an amendment of the plan," Appellants' brief at 19, that is simply not the case. Philips' stated position was nothing more than an accurate recounting of the Plan's terms. The denial resulted from the fact that plaintiffs could not satisfy the preamendment, pre-sale conditions for the Rule of 85 retirement-type subsidy as originally written.

In arguing that § 204(g) requires Philips to credit plaintiffs for service with MESCESI, plaintiffs ignore the fact that the REA does not override the conditions originally imposed by the Plan which defined the early retirement benefits when they were created. As this court has explained, "the fact that [amendments reducing early retirement benefits] will now be 'treated as reducing accrued benefits' does not mean that Congress intends to foreclose employers from circumscribing the

10

availability of such optional benefits when they are being created." Ashenbaugh, 854 F.2d at 1527. "Congress's chief purpose in enacting [ERISA] was to ensure that workers receive promised pension benefits upon retirement," Hoover, 756 F.2d at 985 (emphasis added). Thus, Congress sought "to protect contractually defined benefits." Firestone Tire & Rubber Co., 489 U.S. at 113 (emphasis added). The early retirement benefits plaintiffs seek were neither promised nor contractually defined.

This case is not controlled by Gillis v. Hoechst Celanese Corp., 4 F.3d 1137 (3d Cir. 1993), cert. denied, 114 S. Ct. 1540 (1994), the principal authority relied upon by plaintiffs. In Gillis, we held that §§ 208 and 204(g) required a greater transfer of plan assets in a plan spin-off accompanying a sale of a business than the selling sponsor had agreed to make. Neither of those sections is applicable here.

The facts of Gillis were similar to those of the present case in some respects: both cases involved the sale of a business by the plan sponsor, both plans offered similar Rule of 85 early retirement benefits, the plaintiffs in both cases had not satisfied the Rule of 85 at the time of the sales, and both plans only credited service with the plan sponsor. Id. at 1140, 1143. Gillis, however, differs materially from the present case. In Gillis, the original plan sponsor transferred all of the plan's liabilities and assets to the purchaser. In the vernacular of the trade, there was a plan spin-off. Moreover, the purchaser agreed to provide all of the same early retirement benefits as the previous plan. There was no dispute about

11

whether the plaintiffs, following the spin-off, would be entitled to credit for service with the new employer. They would be. <u>Id</u>. at 1149 (Alito, J., concurring).

The issue in <u>Gillis</u> was whether the original plan sponsor had transferred sufficient assets to satisfy the requirements of § 208. <u>Gillis</u>, 4 F.3d at 1143. Section 208 provides:

> A pension plan may not merge or consolidate with, or transfer its assets or liabilities to, any other plan . . . , unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if the plan had then terminated) . . . .

29 U.S.C. § 1058. Thus, a plan spin-off is permissible only if the participants would receive no less on a hypothetical termination of the plan just after the spin-off than they would have received on a hypothetical termination just before the spin-off.

Accordingly, application of § 208 to the facts in <u>Gillis</u> required the court to determine what benefits the participants would have received in a termination at two points in time. This necessarily implicated § 204(g) since a termination of the plan would have had the same effect as an amendment eliminating all benefits.[2] The court held that the

_____

[2] Not surprisingly, the legislative history of the 1984 amendments indicates that Congress intended early retirement benefits to have the same protection in a plan termination that

12

combined effect of §§ 208 and 204(g) in the context of a plan spin-off like that before it was to require the transfer of an amount of assets that would include sufficient funding for the early retirement benefits for those who would qualify after the transfer by service to the new employer.

Section 208 is not relevant here because this case does not involve a plan spin-off. Section 204(g) is not applicable here because this case does not involve anything that can fairly be considered a plan amendment eliminating or reducing an early retirement benefit. With the exception of the amendment enhancing the early retirement benefit, the Philips Plan was precisely the same before and after the sale. The holding in Gillis is, accordingly, inapposite here.

While we acknowledge that portions of the opinion of the court in Gillis can plausibly be read as inconsistent with the conclusion that we here reach, we do not so read them. In any case, we are required to harmonize the holding of Gillis with the holdings of our prior opinions that a sponsoring employer, with exceptions not here relevant, is free to define the benefits

_____

they would have in an amendment. See, e.g., S. Rep. 575, 98th Cong. 2d Sess., reprinted in 1984 U.S.C.C.A.N. 2547, 2575 ("Terminated Plans: The bill does not provide an exception to the prohibition against reduction of benefits or elimination of benefit options in the case of a terminated plan. Accordingly, a plan is not to be considered to have satisfied all of its liabilities to participants and beneficiaries until it has provided for the payment of contingent liabilities with respect to a participant who, after the date of the termination of a plan, meets the requirements for a subsidized benefit."). As Judge Alito noted in his concurring opinion in Gillis, the Internal Revenue Service has taken the position that the protection of § 204(g) applies in a plan termination.

13

in its ERISA plan and that those definitions must be enforced as written in the absence of a contrary statutory mandate.  As we have explained, the result in <u>Gillis</u> is attributable to the requirements of §§ 208 and 204(g).  Neither those sections nor any other provision of ERISA authorizes us to depart from the terms of Philips' Plan in the circumstances of this case.

The result that we here reach is consistent with that reached in <u>Hunger v. AB, et al.</u>, 12 F.3d 118 (8th Cir. 1993), on virtually identical facts.

IV.

The judgment of the district court will be affirmed.