John M. **HEIN**; Merlene Hein

v.

**FEDERAL DEPOSIT INSURANCE COR-PORATION; Burton McNeil, acting as Howard Savings Bank Pension Plan Administrator and Howard Savings Bank Pension Plan; Burton McNeil and the Retirement Plan of The Howard Savings Bank, Appellants.**

Nos. 94–5641, 95–5181.

United States Court of Appeals,
Third Circuit.

Argued Dec. 12, 1995.

Decided June 28, 1996.

---

B. John Pendleton, Jr. (argued), Annemarie DuPont, McCarter & English, Newark, NJ, for Appellees.

Christopher A. Weals (argued), Fredric S. Singerman, Seyfarth, Shaw, Fairweather & Geraldson, Washington, DC, Edward R. McMahon, Lum, Danzis, Drasco, Positan & Kleinberg, Roseland, NJ, for Appellants Burton McNeil and Retirement Plan of Howard Savings Bank.

Kevin M. Hart, Stark & Stark, Princeton, NJ, for Appellee Federal Deposit Insurance Corporation.

Before: BECKER, ROTH and LEWIS, Circuit Judges.

## OPINION OF THE COURT

ROTH, Circuit Judge:

The question presented in this appeal is whether § 204(g) of the Employee Retirement Income Security Act ("ERISA") allows an individual to qualify for unreduced early retirement benefits despite the fact that he does not qualify for such benefits under the plain language of the relevant company retirement plan. John Hein worked for The Howard Savings Bank ("Bank") for thirty-seven years. Shortly before Hein planned to take early retirement, the Bank was taken over by the Federal Deposit Insurance Cor-

poration ("FDIC") as receiver in bankruptcy. On October 2, 1992, the FDIC sold the Bank's corporate assets to successor First Fidelity but retained control of the Bank's corporate pension plan ("Plan"). Appellees John and Merlene Hein contend that ERISA § 204(g) requires the corporate pension plan and its administrator to count John Hein's service with the successor corporation so that Hein can "grow into" the unreduced early retirement benefits provided by the pension plan.

The district court ruled that, pursuant to ERISA § 204(g) and the "same desk rule" enunciated in *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137 (3d Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1369, 128 L.Ed.2d 46 (1994), *and cert. denied,* — U.S. ——, 114 S.Ct. 1540, 128 L.Ed.2d 192, the Plan was required to credit Hein with time served with the successor corporation. Relying on our more recent and factually applicable decision in *Dade v. North American Philips Corp.*, 68 F.3d 1558 (3d Cir.1995), we will reverse and remand this case to the district court to enter judgment for appellants.

This issue was presented to the district court on cross-motions for summary judgment. The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). We have jurisdiction over the final order of the district court pursuant to 28 U.S.C. § 1291.

I

John Hein became an employee of the predecessor of The Howard Savings Bank on September 19, 1955, and soon thereafter became a participant in the Bank's employee pension benefit plan. *See* Retirement Plan of Howard Savings Bank (revised Dec. 1, 1985); App. Vol. I at 22. Section V of the

Plan offered an early retirement option. App. Vol. I at 36–37. Normally, individuals exercising this early retirement option receive benefits reduced actuarially to account for a longer anticipated payment period. Those individuals who met criteria stated in the Plan, however, were entitled to "unreduced early retirement benefits." These benefits included a subsidy from the Bank so that from the date of early retirement a retiree would receive benefit payments equivalent to those which he would have received had he postponed retirement until age sixty-five.

According to the Plan, unreduced early retirement benefits were available to any Plan member who attained

any combination of the ages and the years of Vesting Service, combinations set forth below on his Actual Retirement Date:

| Age on Actual Retirement Date | Vesting Service on Actual Retirement Date |
|---|---|
| 55 | 35 |
| 56 | 34 |
| 57 | 33 |
| 58 | 32 |
| 59 | 31 |
| 60 | 30 |
| 61 | 29 |
| 62 | 20 |
| 63 | 20 |
| 64 | 20 [1] |

App. Vol. I at 37.

In the spring of 1992, Hein requested and received from the Plan administrator an estimate of his monthly benefit in the event he retired on January 1, 1993. On October 2, 1992, the FDIC was appointed receiver for the Bank. The FDIC issued a notice to all Bank employees informing them that their employment with the Bank was terminated. At that time, Hein was fifty-four years old with thirty-seven years of service at the Bank. That same day, the FDIC and the

---

1. The Summary Plan Description says that an employee becomes eligible for early retirement when he reaches age 55 and completes 10 years of vesting service. Summary Plan Description of the Howard Savings Bank [hereinafter SPD]; App. Vol. I at 84, 88. In regard to unreduced early retirement benefits, the SPD provides:

> If you are eligible to retire early and choose to do so, your retirement benefit can begin as early as the first of the month after your last day of employment. If you choose to receive

your pension early, the benefit is reduced to reflect the longer period of time over which you receive benefits from the Plan....

However, the Bank provides an important benefit to early retirees. This reduction does not take effect if at retirement you have a certain minimum number of years of vesting service, given your age, as shown.

App. Vol. I at 92.

This text is followed by a chart identical to the one reproduced here.

First Fidelity National Bank, N.A., entered into a Purchase and Assumption Agreement whereby First Fidelity agreed to assume certain assets and liabilities of The Howard Savings Bank. The Plan was not included as part of the assets and liabilities assumed by First Fidelity. The Plan remained with the FDIC, in its receivership capacity. Burton McNeil, an FDIC employee, was named Plan Administrator.

First Fidelity continued to operate all branches of The Howard Savings Bank without interruption, and Hein continued to work in the same position with First Fidelity that he held with The Howard Savings Bank before the takeover.

On December 31, 1992, Hein retired from First Fidelity. In January 1993, he requested the unreduced early retirement benefits that he claimed were due him under the Plan. In February 1993, his request was denied, and he was awarded reduced retirement payments of approximately one third the amount he would receive with the unreduced early retirement benefit.[2] McNeil denied Hein's administrative appeal, and Hein filed suit in the district court against the FDIC, the Plan, and Burton McNeil.

Hein claims[3] that he was entitled under ERISA to unreduced early retirement benefits (Count I). He also raises a promissory estoppel claim (Counts II and III), alleging that his reliance in making retirement decisions upon the Plan actuary's estimated benefit calculation and upon the Summary Plan Description ("SPD") estopped defendants from denying him unreduced early retirement benefits. Furthermore, Hein claimed that defendants breached their fiduciary duties (Counts IV, V, and VI). These claims were presented to the district court on motions and cross-motions for summary judgment.

The district court ruled for Hein on Count I of his complaint and awarded him unreduced early retirement benefits. The district court found that Hein never qualified for unreduced early retirement benefits under the express terms of the Plan because he did not reach age fifty-five while employed by the Bank. Nevertheless, the district court granted Hein unreduced early retirement benefits pursuant to ERISA § 204(g). 29 U.S.C. § 1054(g) (1994). The district court relied on our decision in *Gillis v. Hoechst Celanese Corp.,* 4 F.3d 1137 (3d Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1369, 128 L.Ed.2d 46 (1994), *and cert. denied,* — U.S. —, 114 S.Ct. 1540, 128 L.Ed.2d 192, which interpreted § 204(g) as allowing years of service accumulated while working for a new employer to be counted towards qualifying for early retirement benefits under the original employer's retirement plan. *Id.* at 1147–48. The district court applied this "same desk rule" and held that Hein should be permitted to "grow into" the Plan's unreduced early retirement benefits. Because Hein turned fifty-five while working in the same position at First Fidelity that he had held at the Bank, the court reasoned that he had fulfilled the Plan requirements and was entitled to unreduced early retirement benefits.

The court did not reach Hein's promissory estoppel or fiduciary duties claims and did not address any of the claims against the FDIC.[4] In a subsequent ruling, the district court awarded counsel fees and court costs totaling $70,353.83 to the Heins' attorneys, pursuant to 29 U.S.C. § 1132(g)(1). McNeil and the Plan appealed.

## II

■ Appellants contend that the district court erred as a matter of law in its application of ERISA § 204(g) to Hein's pension claim. Our review of the district court's order granting summary judgment is plenary. *Wheeler v. Towanda Area School Dist.,* 950 F.2d 128, 129 (3d Cir.1991); *Public Interest Research Group of N.J. v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 71 (3d

2. The Heins were awarded reduced benefits totaling $1,027.39 per month, as opposed to the $2,943.44 per month of unreduced benefits that they claim.

3. The claims in this case were brought by both John and Merlene Hein, but because the factual scenario refers to John Hein only, we use the singular throughout the opinion for consistency.

4. The FDIC is thus not a party to this appeal.

Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). We apply the same test that the district court should have applied initially. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

 We have often remarked on ERISA's broad scope and far-ranging effect. *See, e.g., Northeast Dept. ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147, 162 (3d Cir.1985) ("ERISA is a comprehensive benefit scheme designed to protect employees enrolled in pension and benefit plans."). Nevertheless, ERISA neither mandates the creation of pension plans nor dictates the benefits to be afforded once a plan is created. *Dade v. North American Philips Corp.,* 68 F.3d at 1561 (citing *Hlinka v. Bethlehem Steel Corp.,* 863 F.2d 279, 283 (3d Cir.1988); H.R.Rep. No. 807, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 4639, 4670, 4677). Only the words of the Plan itself can create an entitlement to benefits. Consequently, "we are required to enforce the Plan as written unless we can find a provision of ERISA that contains a contrary directive." *Id.* at 1562.

Our inquiry, therefore, begins with the words of the Plan itself. In relation to early retirement options, the Plan provides:

(5)(a) Any Member, ... may retire on the first day of any calendar month in which he attains his fifty-fifth (55th) birthday and ten (10) Years of Service herein termed "Early Retirement Date."

(b) If a Member retires on his Early Retirement Date, ... (ii) payments of Retirement Income shall commence, at the option of the Member, either (x) on his Normal Retirement Date (in which event he will receive the amount of Retirement Annuity Benefits and/or Retirement Benefits which have accrued to his Early Retirement Date) or (y) on the first day of any month coinciding with or following his Early Retirement Date (in which event he will receive [actuarially reduced benefits]); provided, however, *the foregoing reduction in benefits shall not be made if the Member has attained any combination of the ages and the years of Vesting Service, combinations set forth below on his Actual Retirement Date:*

Plan § V(5); App. Vol. 1 at 36–37 (emphasis added). The colon is followed by the chart of ages and years of service set forth earlier in this opinion.

The district court found that:

Under the plain language of the Plan itself, Mr. Hein does not qualify for unreduced benefits because he did not reach one of the specific qualifying combinations of age and years of service. The table set forth in the Plan is not offered as an illustration of the qualifying combinations, but rather as an exhaustive list of those combinations. Under the language of the Plan itself, Mr. Hein did not qualify for unreduced retirement benefits.

*Hein v. FDIC,* No. 93–2418, slip op. at 8 (D.N.J. Sep. 13, 1994). Our analysis of the relevant Plan provisions confirms the district court's reading of the plain language of the Plan.

 Subsection 5(a) provides that an individual may be eligible for early retirement benefits if he retires "on the first day of any calendar month in which he attains his fifty-fifth birthday...." Hein was terminated before the first day of the month in which he would reach his fifty-fifth birthday. Thus he was not eligible for early retirement benefits under subsection 5(a).[5]

---

5. The key text in McNeil's benefit denial letter reads as follows:

At the time of the closing of the Bank and your involuntary termination, you were 54 years old and had 37 years of service. You therefore failed to satisfy the requirement for early retirement benefits under section V(5) that you leave the Bank's employment on or after your "early retirement date," which would have been December 1, 1992. You also did not satisfy the preconditions for unreduced early retirement benefits because you were age 54 at the time of your termination from the Bank. Because in each case the requirements for benefit eligibility were not met, you are not entitled to an unreduced early retirement benefit under the Plan.

Letter from Burton McNeil, Plan Administrator to John Hein (Feb. 10, 1993); App. Vol. II at 253.

Subsection 5(b) further provides that in order to qualify for unreduced early retirement benefits, an employee's "Actual Retirement Date" must occur after he has attained some combination of age and years of service set forth in the displayed chart. The youngest age which is stated in the chart is age fifty-five. *See* Plan, § V(5); App. Vol. 1 at 36–37. The fact that the chart runs from age fifty-five through age sixty-four supports the district court's conclusion that the chart includes all those combinations of age and years of service that entitle an individual to unreduced early retirement benefits. As the district court observed, neither the Plan document nor the SPD refers to the benefit formula as the "Rule of 90" or otherwise indicates that a combination of age and years of service other than those listed in the table might suffice to entitle an individual to early retirement benefits. Because Hein did not reach age fifty-five while he was at the Bank, he could not have satisfied the conditions for the subsidy before the Bank entered receivership and Hein's employment terminated.

Furthermore, other sections of the Plan apply specifically to individuals like Hein who leave the Bank before satisfying the requirements for early retirement benefits. Plan § VIII(6), for example, provides that:

> If a Member with vested rights attributable to contributions by the Bank under this Plan *separates from the service of the Bank prior to satisfying the age requirement for early retirement benefits, as set forth in Paragraph 5(a) of Section V hereof,* such Member shall, upon attaining the age requirements for receiving such early retirement benefits, be entitled to elect to have payments made to him on and after meeting such age requirements in an amount equal to the benefit he would have received at normal retirement age, *actuarially reduced.*

Plan § VIII(6); App. Vol. 1 at 45 (emphases added).[6] Thus, Hein falls outside the early retirement provisions of Plan § V and squarely within the provisions of Plan § VIII(6), which does not provide for unreduced early retirement benefits.

### III

■ Although Hein is not entitled to unreduced early retirement benefits under the unambiguous language of the Plan, he argues that ERISA § 204(g) allows him to fulfill the Plan's age requirements during his employment in the same position with First Fidelity. ERISA § 204(g) provides that:

> (1) The accrued benefit of a participant under a plan may not be decreased by an *amendment* of the plan. . . .
>
> (2) For purposes of paragraph (1), a plan amendment which has the effect of—
>
>> (A) eliminating or reducing an early retirement benefit or retirement-type subsidy . . .
>
> with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. *In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy* . . . .

29 U.S.C. § 1054(g) (emphasis added). The early retirement benefits at issue in this case are a "retirement-type subsidy" within the meaning of ERISA § 204(g). *See Dade,* 68 F.3d at 1562.

■ Pursuant to § 204(g)(1), we must first determine whether there has been an "amendment" that reduced Hein's accrued benefits under the Plan. There is no evidence in the record that the actual text of the Plan was amended or modified in any way. This determination does not end our inquiry, however. An erroneous interpretation of a plan provision that results in the improper denial of benefits to a plan participant may be construed as an "amendment" for the purposes of ERISA § 204(g). Therefore, if McNeil improperly denied Hein unreduced early retirement benefits, McNeil's action could be construed as a Plan amendment, and ERISA § 204(g) would apply. *See Gillis,* 4 F.3d at 1144. The critical question is

---

6. Plan § XI also makes special provisions for individuals who were terminated "for any reason other than . . . death or retirement. . . ." Plan § XI; App. Vol. I at 51. This section does not provide for unreduced early retirement benefits. *See* Plan § XI(3)(a)-(b).

whether McNeil's interpretation of the Plan improperly denied accrued benefits to Hein.

ERISA § 204(g)(2) mandates accrual of Hein's unreduced early retirement benefits only if Hein at some point "satisfied ... the preamendment conditions for the subsidy." Hein did not satisfy the conditions for the subsidy before he was terminated from the Bank. We must therefore consider whether Hein satisfied the Plan requirements for unreduced early retirement benefits during his employment at First Fidelity, the successor to The Howard Savings Bank.

Section V(5)(b) of the Plan provides that an individual may qualify for unreduced early retirement benefits when he "has attained any combination of the ages and years of Vesting Service ... set forth below on his Actual Retirement Date...." Thus ERISA § 204(g) would protect Hein's benefits if he had earned them by reaching age fifty-five before his "Actual Retirement Date" as defined by the Plan. In other words, if the day that Hein retired from First Fidelity, only three months after his termination from The Howard Savings Bank, could be considered to be his "Actual Retirement Date" for Plan purposes, Hein would qualify for unreduced early retirement benefits because he would have turned fifty-five before his "Actual Retirement Date." ERISA § 204(g) would then protect his benefits from denial or amendment. However, the Plan's definition of "Actual Retirement Date" precludes such a result.

The Howard Plan defines "Actual Retirement Date" as "the date on which the service of an *Employee* is terminated by retirement." Plan, § 1; App. Vol. I at 25 (emphasis added). "Employee" is defined in the Plan as "any person who is employed by the Bank and who received compensation from the Bank...." *Id.;* App. Vol. I at 26. "Bank," according to the Plan, "means The Howard Savings Bank and any affiliate or subsidiary which shall adopt this Plan for its employees

with the approval of the bank by a Committee resolution." *Id.*

First Fidelity is neither an affiliate nor a subsidiary of The Howard Savings Bank. Hein could not, therefore, satisfy the requirements of the Plan after the asset sale to First Fidelity; when he reached age fifty-five he was no longer an "Employee" of the "Bank" as required by the Plan.[7] Because the Plan is written in such a way that Hein could not satisfy the conditions for the subsidy during his employment at First Fidelity, ERISA § 204(g) is inoperative; ERISA § 204(g) can protect an entitlement to benefits, but it cannot create an entitlement to benefits when no entitlement exists under the terms of the Plan.

Nevertheless, the district court ruled that § 204(g) mandates the extension of unreduced early retirement benefits to Hein in this case. According to the court, ERISA § 204(g) and *Gillis* entitled Hein to count his post-termination time of service with First Fidelity with his time of service at the Bank under the "same desk rule." *Hein v. FDIC,* slip op. at 9–13. We conclude, however, that under our more recent holding in *Dade,* a case more closely analogous to the facts of the case before us, the district court's ruling is error.[8]

The plaintiffs in *Gillis* were former employees of Hoechst Celanese Corp. who continued to work in their same jobs after the division in which they worked was sold by Hoechst to American Mirrex Corporation. *Gillis,* 4 F.3d at 1140. Neither plaintiff satisfied the requirements for early retirement benefits at the time the division was sold. The issue was whether or not ERISA §§ 208 and 204(g) would allow the plaintiffs to "grow into" their early retirement benefits by aggregating the time that they worked at American Mirrex and the time that they worked at Hoechst. *Id.* at 1143. We concluded that ERISA § 204(g) did not definitively answer this question, and we examined analogous I.R.S. authority to determine when

---

7. In fact, Hein technically had no "Actual Retirement Date" according to the Plan, because he was not a Bank Employee when he retired.

8. The *Dade* case had not been decided at the time the district court rendered its decision and the district court could not have been aware at the time of the limitations that *Dade* would place on *Gillis.*

an individual is "separated from service." We concluded that the employees could "continue to accumulate years of service while working for American Mirrex—the successor employer—to be counted towards qualifying for early retirement benefits." *Id.* at 1147-48 (relying in part on *Hollingshead v. Burford Equip. Co.*, 809 F.Supp. 906 (M.D.Ala. 1992)).

The district court applied *Gillis*'s "same desk rule" to Hein. The court ruled that because Hein was working in the same position for successor employer First Fidelity, ERISA § 204(g) allowed him to qualify for unreduced early retirement benefits.

Our more recent decision in *Dade* distinguished *Gillis* and reached the opposite result. *Dade* involved the sale of the assets of Philips' Magnavox Electronic Systems division to MESC Electronics Systems, Inc. ("MESCESI"). After the sale, plaintiffs, who were plan members at Magnavox, continued to work for MESCESI in the same positions in which they were employed by Magnavox at the time of the asset sale. *Dade*, 68 F.3d at 1560. Plaintiff Budde had attained the necessary years of service to qualify for unreduced early retirement benefits while he was at Magnavox, but like Hein he had not yet attained the requisite qualifying age of fifty-five. Plaintiffs sought to invoke § 204(g) to add their years of service at MESCESI to their service at Magnavox in order to qualify for unreduced early retirement benefits under the plan.[9] *Id.* at 1561.

We declined to take plaintiffs' years of service with MESCESI into account when determining whether or not they qualified for unreduced early retirement benefits under the Magnavox plan:

> Section 204(g) is not applicable under the facts of this case.... Philips' stated position was nothing more than an accurate recounting of the Plan's terms. The denial resulted from the fact that plaintiffs could

not satisfy the preamendment, pre-sale conditions for the Rule of 85 retirement-type subsidy as originally written.

*Id.* at 1562.

*Dade* controls this case. Like the plaintiffs in *Dade*, Hein simply did not satisfy the pre-amendment, pre-transfer conditions for unreduced early retirement benefits. As we noted in *Dade*:

> [§ 204(g)] does not override the conditions originally imposed by the Plan which defined the early retirement benefits when they were created.... '[T]he fact that [amendments reducing early retirement benefits] will now be 'treated as reducing accrued benefits' does not mean that Congress intends to foreclose employers from circumscribing the availability of such optional benefits when they are being created.'

*Id.* (quoting *Ashenbaugh v. Crucible Inc., 1975 Salaried Retirement Plan*, 854 F.2d 1516, 1527 (3d Cir.1988), *cert. denied*, 490 U.S. 1105, 109 S.Ct. 3155, 104 L.Ed.2d 1019 (1989)). It was one of the conditions originally imposed by the Plan that Hein reach age fifty-five while employed at the Bank in order to qualify for unreduced early retirement benefits. Had Hein met this criterion, ERISA § 204(g) would have protected his benefit from termination. But Hein did not satisfy the Plan requirement, and we cannot read ERISA to change the terms of the Plan and vest Hein with a benefit for which he never qualified.

We also note that this case is factually more similar to *Dade* than it is to *Gillis*. First, unlike *Dade* and this case, *Gillis* involved a plan "spin-off" whereby "the original plan sponsor transferred all of the plan's liabilities and assets to the purchaser." *Id.* at 1563. We held in *Gillis* that "the combined effect of §§ 208 and 204(g) in the context of a plan spin-off ... was to require

---

9. Philips did amend its plan so that: "Magnavox employees continuing with MESCESI would be entitled to credit for up to one year of additional service with MESCESI towards the Philips Plan's Rule of 85 requirements." *Dade*, 68 F.3d at 1560. Thus an individual in Hein's position would have received a year of credit for his service with the successor employer. Even with

this additional year, Budde did not qualify under the Philips plan. If the FDIC had allowed such an exception in this case, Hein would have been able to count his three months service with First Fidelity toward Plan requirements for unreduced early retirement benefits. The FDIC took no such discretionary action.

the transfer of an amount of assets that would include sufficient funding for the early retirement benefits for those who would qualify after the transfer by service to the new employer." *Id. Dade*, by contrast, did not involve a transfer of the plan assets to the purchaser, and therefore we held that:

> Section 208 is not relevant here because this case does not involve a plan spin-off. Section 204(g) is not applicable here because this case does not involve anything that can fairly be considered a plan amendment eliminating or reducing an early retirement benefit. . . . The holding in *Gillis* is, accordingly, inapposite here.

*Id.; see also Hunger v. AB*, 12 F.3d 118 (8th Cir.1993) (reaching result consistent with *Dade* on similar facts), *cert. denied*, —— U.S. ——, 114 S.Ct. 2676, 129 L.Ed.2d 811 (1994). As in *Dade*, this case does not involve a transfer of Plan assets to the successor corporation. McNeil's accurate interpretation of the Plan provisions, furthermore, cannot be considered an amendment of the Plan. As in *Dade*, neither ERISA § 208 nor ERISA § 204(g) applies to the facts of this case.

Second, this case resembles *Dade* in that there is no evidence that the purchasing company made representations about benefits. The purchaser in *Gillis* agreed "to provide all of the same early retirement benefits as the previous plan. There was no dispute about whether plaintiffs, following the spin-off, would be entitled to credit for service with the new employer. They would be." *Dade*, 68 F.3d at 1563 (citing *Gillis*, 4 F.3d at 1149 (Alito, J. concurring)). In this case, as in *Dade*, neither the new employer nor the Plan administrator made any such promise to Bank employees. There was no question that Hein was bound by the terms of the Plan as written. *Dade* thus applies.

Hein concentrates on other facts in an attempt to distinguish this case from *Dade*, but the factual distinctions that he raises are either illusory or irrelevant. First, Hein argues that he qualified for unreduced early retirement benefits before age fifty-five and that the Plan merely prevented him from *collecting* those benefits before age fifty-five. He argues that he was entitled to unreduced early retirement benefits under the Plan be-cause he reached a combination of age and years of service totaling ninety years before his termination. The district court rejected this argument and arguments involving an earlier amendment to the Plan intended to support this contention. *Hein v. FDIC*, slip op. at 8. As the district court found, the Plan provided that Hein had to reach age fifty-five while he was employed with the Bank in order to qualify for unreduced early retirement benefits. *See* discussion *supra*. Hein did not satisfy this condition.

█ Second, Hein notes that in *Dade*, the Pension Committee of the Philips Plan, "exercise[d] its discretion to amend the Philips Plan and credit employees with periods of service with a successor employer." The Philips Committee allowed former employees one year of service with their new employer toward satisfying plan requirements. *See supra* note 10. Hein argues that the sudden seizure of the Howard Savings Bank did not afford the Howard Plan Committee the opportunity to consider safeguards to protect employees from interpretations of the Plan which might be rendered by intervenors with potentially conflicting interests. Hein contends that given the opportunity, the Bank's Plan Committee might well have chosen to amend the Plan to allow him to collect unreduced early retirement benefits. He argues that unduly restrictive and incorrect interpretation of the Howard Plan by McNeil, without the benefit of interpretation by the Plan Committee or an appropriate replacement, distinguishes this case from the holding in *Dade*.

The substance of this claim appears to be that McNeil and the FDIC improperly substituted their interpretation of the Plan for that of the Plan Committee, in derogation of the procedures specified in the Plan. The Plan expressly provides that it is to be administered by a Committee comprised of five individuals appointed by the Chairman of the Board of the Bank. The Committee is empowered by the Plan to "interpret the Plan and to decide any and all matters arising thereunder or in connection with the administration of the Plan, including, but not limited to, the determination of any Employee's eligibility and the size and form of a Partici-

pant's benefits...." Plan, § XII; App. Vol. I at 54. After the FDIC was appointed receiver for the Plan, McNeil, rather than a Plan Committee, was designated to hear Hein's appeal for unreduced benefits. Hein argues that McNeil inappropriately supplied terms and conditions not in the Plan document.

Citing *Curtiss–Wright Corp. v. Schoonejongen*, —— U.S. ——, ——, 115 S.Ct. 1223, 1229, 131 L.Ed.2d 94 (1995), Hein notes that ERISA dictates enforcement of the Plan as written, including the means of administration adopted by the Plan. He cites no specific authority, however, that directly supports his contention that the FDIC's appointment of McNeil as sole administrator was inappropriate. We have likewise found no case directly on point. *Hennessy v. Federal Deposit Insurance Corp.* is, however, analytically similar to this case. 58 F.3d 908 (3d Cir.1995), *cert. dismissed sub nom., Hanna v. F.D.I.C.*, —— U.S. ——, 116 S.Ct. 688, 133 L.Ed.2d 593 (1995), *and cert. denied*, —— U.S. ——, 116 S.Ct. 1318, 134 L.Ed.2d 471 (1996), *and cert. denied sub nom., Hanna v. F.D.I.C.*, —— U.S. ——, 116 S.Ct. 1318, 134 L.Ed.2d 471 (1996). In *Hennessy*, former employees of an insolvent bank ("Meritor") sued the FDIC as receiver for the bank for, *inter alia*, improper termination of benefits. The question before us was "what 'procedure' the FDIC must follow when it is appointed receiver for Meritor and it terminates an employee welfare benefit plan...." *Id.* at 922.

Relying on *Curtiss–Wright*, we construed the plan to reserve to Meritor's board of directors the right to terminate the corporate benefit policy. *Id.* Because the bank was already in receivership, it was impractical to expect the FDIC to recreate the plan's procedures for benefit determinations. We concluded that:

> under such circumstances, it would make little sense to require the FDIC to follow *Meritor's* procedure for terminating these plans (i.e., calling a meeting of the Board of Directors of *Meritor* or taking other corporate action). While the appropriate analog within the FDIC to Meritor's Board of Directors is not immediately apparent, *it is clear that an official receiver has great discretion in taking action that would previously have been handled through the normal methods of corporate governance. Thus, the receiver alone may act in ways that might otherwise require Board action. . .. [W]e decline to require further investigation into the methods by which the FDIC makes its decisions.*

*Id.* at 922–23 (emphasis added).

We likewise decline the invitation to investigate the FDIC's decision-making processes. As in *Hennessy*, it would make little sense at this stage to require the FDIC to follow the Bank's procedure for resolving Plan discrepancies (i.e., calling a meeting of the five members of the Plan Committee to interpret Hein's benefits). We will permit the FDIC the same wide discretion in handling matters previously handled through the normal methods of corporate governance that we permitted in *Hennessy*. ERISA does not require that the FDIC determine precise analogs to prior corporate procedures in order to administer the Plan as written. To force it to do so would be impractical. Hein cites no authority mandating such extraordinary measures.

■ Third, Hein argues that this case is materially different from *Dade* because in this case all necessary contributions to fund Hein's unreduced retirement benefit had been made by his employer and the employer's contributions had ceased six years before the FDIC was appointed receiver. Hein contends that Congress did not intend to allow intervenors to deprive plan participants of fully funded benefits. According to Hein, estimates of the Howard Plan actuary confirm that Hein had reached the maximum number of years of credited service and that the Plan had received all contributions to be made on his behalf.

This argument misses the mark. The issue is whether Hein was *entitled* to benefits, not whether funding for the benefits that he claims had already been set aside. Congress intended ERISA § 204(g) to protect retirement-type benefits under certain circumstances. Funding, however, is irrelevant to entitlement. Nothing in § 204(g) establishes the Plan's funding level as a test for accrual, and we will not take it into account here.

The argument that Hein's unreduced early retirement benefit was fully funded does not bear on his entitlement to unreduced benefits.

None of these arguments distinguish this case from *Dade* in a meaningful way. Because Hein was not entitled to unreduced early retirement benefits under the plain language of the Plan and because *Dade* makes clear that we do not apply a "same desk rule" under the circumstances presented here, ERISA § 204(g) does not mandate that Hein be credited with post-termination service and awarded unreduced early retirement benefits. We will reverse the judgment of the district court as to Count I and remand with instructions to enter an order in accordance with this opinion. We will also vacate and remand the district court's order granting attorneys' fees to Appellees.

## IV

Our holding with regard to Count I of Hein's complaint has ramifications for his other claims as well. Appellants argue that a reversal on Count I obviates the need for a remand of Hein's other claims because as a matter of law those claims cannot withstand an adverse ruling on Count I. Although the district court did not reach Counts II through VI, the issues were presented to that court. Both parties have adequately briefed the issue of whether or not a remand is necessary. To the extent that we can decide these issues as a matter of law without further factual development, we serve the interests of judicial economy as well as the interests of the parties in avoiding unnecessary re-litigation. Put simply, the legal issues are clearly presented and ripe for review.

Because we consider Counts II through VI without the benefit of findings of fact from the district court, we will dismiss these claims only if there is no genuine issue of material fact and appellants are entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). We consider the facts as they have been determined pursuant to our adjudication of Count I and give Hein the benefit of any relevant inferences from these facts. *See Goodman v. Mead Johnson & Co.*, 534

F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

Counts II and III of Hein's amended complaint allege that the defendants in this case are equitably estopped from denying Hein unreduced early retirement benefits. According to the complaint, Hein reasonably relied upon the SPD and a report provided to him by a Plan actuary indicating his entitlement to unreduced early retirement benefits. Because Hein relied upon these documents in making retirement plans and investments, he argues that appellants are equitably estopped from denying him unreduced early retirement benefits.

Given our ruling on Count I and the district court record, Hein's claim for equitable estoppel must fail. A judgment for Hein on his equitable estoppel claim would require us to find (i) a material misrepresentation, (ii) reasonable reliance upon the misrepresentation, and (iii) damage resulting from the misrepresentation. *Heckler v. Community Health Serv.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223–24, 81 L.Ed.2d 42 (1984); *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 (3d Cir.1991), *cert. denied*, 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991); *Pane v. RCA Corp.*, 868 F.2d 631, 638 (3d Cir.1989). A party's reliance on a misrepresentation "must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Heckler*, 467 U.S. at 59, 104 S.Ct. at 2223–24 (citing *Wilber National Bank v. United States*, 294 U.S. 120, 124–25, 55 S.Ct. 362, 364, 79 L.Ed. 798 (1935)).

Hein claims that he satisfies all three elements for equitable estoppel. First, he identifies an alleged misrepresentation. Hein claims that in April 1992, he received a written report from Towers Perrin, "the Bank's agent and actuary," indicating that the Bank had made all necessary contributions for Hein's unreduced early retirement benefits. Hein next claims that in reliance on the Bank's representation he entered into a contract for substantial renovations to a home in

the Adirondacks, where he and his wife plan to spend their retirement.

The plain language of the Plan and the SPD preclude Hein's claim. We have already discussed at length the fact that the words of the Plan do not bestow upon Hein a right to unreduced early retirement benefits. The same table setting forth qualifying combinations of ages and years of service that appears in the Plan also appears in the SPD, and nowhere does the SPD refer to the benefit formula as a "Rule of 90." The provisions of the SPD, like the provisions of the Plan itself, present the age requirement unambiguously. *See* discussion *supra.* Hein cannot, therefore, base his estoppel claim on the language of the SPD.

In the face of such clear evidence that Hein did not qualify for unreduced early retirement benefits, the letter from Towers Perrin upon which Hein purports to have relied is insufficient support for his estoppel claim. As we ruled in *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation,* "a participant's reliance on employer representations regarding benefits may never be 'reasonable' where the participant is in possession of a written document notifying him of the conditional nature of such benefits." *In re Unisys Corp. Retiree Medical Benefit ERISA Litigation,* 58 F.3d 896, 908 (3d Cir. 1995) (citing *Gordon v. Barnes Pumps, Inc.,* 999 F.2d 133, 137 (6th Cir.1993); *Alday v. Container Corp. of America,* 906 F.2d 660, 666 (11th Cir.1990), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991)). In *Unisys,* our finding that a reservation of rights clause contained in the plan was unambiguous "undercut[ ] the reasonableness of any detrimental reliance by the retirees." *Id.* Because of the clear language of the plan in that case, we dismissed the estoppel claim on summary judgment, despite the fact that the company had "engaged in a 'systematic campaign of confusion' which led employees to believe that their benefits were to continue for life." *Id.* at 907 n. 20.

The case for equitable estoppel here is even less compelling than the plaintiffs' case in *Unisys.* Hein, like the *Unisys* retirees, was in possession of the written Plan document and SPD notifying him of the condi-

tional nature of his benefits. There is no evidence or allegation of a "systematic campaign of confusion" by the Bank. There was, at most, a possibly misleading letter from the benefits department calculating Hein's likely future benefits *if* he retired from the Bank on January 1, 1993. The sale of the Bank's assets on October 2, 1992, and Hein's termination on that same day prevented his retirement from the Bank on or after that date. Under *Unisys,* Hein could not reasonably rely on such a conditional letter to establish a vested right to early retirement benefits, especially in the face of a written Plan document that clearly set out the requirements to qualify for benefits.

In light of our ruling on Count I and our holding in *Unisys,* we will remand the case to the district court with instructions to dismiss Hein's complaint with respect to Counts II and III.

Counts IV, V, and VI of Hein's amended complaint allege that Hein is entitled to monetary relief to compensate him for breach of fiduciary duty by McNeil and the FDIC. Hein brings these claims pursuant to the enforcement section of ERISA, § 502(a).

■ Appellants seek dismissal of Hein's fiduciary duties claims because they allege that Hein improperly attempts to use ERISA § 409(a), 29 U.S.C. § 1109(a), to collect damages in his individual capacity. The text of § 409(a) provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good *to such plan* any losses *to the plan* resulting from each such breach, and to restore *to such plan* any profits of such fiduciary which have been made through use of *assets of the plan* by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . .

29 U.S.C. § 1109(a) (emphases added). The Supreme Court has held that Congress intended any extracontractual damages sought by a plan participant pursuant to § 409 to inure to the plan itself, and *not* to an individ-

ual plan beneficiary. *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 140–44, 105 S.Ct. 3085, 3089–91, 87 L.Ed.2d 96 (1985); *see also Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1162 n. 7 (3d Cir. 1990) ("Because plaintiffs here seek to recover benefits allegedly owed to them in their individual capacities, their action is plainly not authorized by either § 409 or § 502(a)(2)"). The few exceptions to this doctrine have been narrow and limited to their facts. *See, e.g., Amalgamated Clothing & Textile Workers v. Murdock,* 861 F.2d 1406, 1414–15 (9th Cir.1988) (imposing constructive trust in favor of beneficiaries because it is "the only remedy, under the facts of this case, that can redress the abuse of this plan's assets. . . ."). Thus, to the extent that Hein relies on § 409 to support his claim for recovery of damages, his cause of action for breach of fiduciary duty is invalid.

 Hein contends that the reference to ERISA § 409(a) is not fatal. He notes that his complaint expressly states in paragraph 7 that it is brought pursuant to § 502(a), 29 U.S.C. § 1132(a), and that it "avers a breach of fiduciary duty utilizing the statutory language of Section 404(a)(1)(B) and common law fiduciary duties." Pursuant to *Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund,* 12 F.3d 1292 (3d Cir.1993), we can award claimants relief in their individual capacities when their claim arises under ERISA § 404. Such relief is authorized as "other appropriate equitable relief" under ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B). *Varity Corp. v. Howe,* —— U.S. ——, —— – ——, 116 S.Ct. 1065, 1075–79, 134 L.Ed.2d 130 (1996); *Bixler,* 12 F.3d at 1293–94, 1299; *In re Unisys Corp.,* 58 F.3d at 899–901 (citing *Anweiler v. Amer. Elec. Power Serv. Corp.,* 3 F.3d 986, 993 (7th Cir.1993)); *see* Appellants' Reply Brief at 17 (conceding that "*Bixler* would permit individual recovery for a breach of fiduciary duty under certain circumstances. . . .").

Although a § 404 recovery is theoretically available, Hein never mentions § 404 in his amended complaint. Given the language of the complaint, however, this is not a serious impediment to his claim. Counts V and VI in fact closely track the language of § 404, *see* 29 U.S.C. § 1104, and appellants had ample opportunity to respond to these arguments in their reply brief. Construing the pleading liberally, we find that Hein's claims for breach of fiduciary duty were properly brought before the district court pursuant to § 404. Fed.R.Civ.P. 8(f) (mandating construction of pleadings to do "substantial justice"); *Maty v. Grasselli Chemical Co.,* 303 U.S. 197, 200, 58 S.Ct. 507, 509, 82 L.Ed. 745 (1938) (noting that pleadings should not raise barriers to fair and just settlements); *Monal Constr. Co. v. Brookside Ltd. Partnership,* 539 F.Supp. 478, 480 (W.D.Pa.1982) (considering removal action under proper Code section despite typographical error indicating different section).

The question before us then is whether Hein's claims for damages for breach of fiduciary duty can survive as a matter of law, assuming that they were brought under ERISA §§ 404 and 502. Section 404 states in part that:

(a) (1) [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; . . . .

29 U.S.C. § 1104.[10]

Appellants assert that Hein's § 404 claim fails on two grounds. First, appellants argue

---

**10.** Appellants do not contest that McNeil is a Plan fiduciary as defined by ERISA. ERISA defines a fiduciary in part as a person who "exercises any discretionary authority or discretionary control respecting management" of a plan or who has "authority or control respecting management or disposition of its assets" or who "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i)-(iii).

that § 502(a)(3) authorizes only equitable relief and that the money damages sought by Hein are not available under this section. *Id.* at 18 (citing *Mertens v. Hewitt Assoc.,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)). Second, they contend that Hein has failed to establish any causal link between the alleged fiduciary breach and the damages he seeks to recover. Appellants maintain that if Hein's underlying claim for unreduced early retirement benefits was correctly denied because he was not entitled to such benefits under the terms of the Plan, he cannot recover these additional benefits by showing that assets of the Plan were improperly invested.

■ We agree that monetary damages generally are not available pursuant to § 502(a)(3). This section provides that a civil action may be brought:

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132(a)(3) (emphasis added). Because subsection (A) of § 502(a)(3) is expressly limited to injunctive relief, Hein's only hope to secure monetary relief is under subsection (B). The Supreme Court foreclosed this option in *Mertens.* After reviewing the history and meaning of "equitable relief" and the use of those words in the context of ERISA, the Court concluded that "appropriate equitable relief" in subsection (B) does not include monetary damages, but rather refers to remedies traditionally viewed as equitable, such as injunction or restitution. *Mertens,* 508 U.S. at 256–63, 113 S.Ct. at 2068–72. Because Hein requests

monetary damages under ERISA § 502(a)(3) and such damages are legal damages not available pursuant to *Mertens,* we will instruct the district court to dismiss all three of Hein's fiduciary duties claims for monetary damages (Counts IV, V, and VI).[11]

■ Given our holding on Count I, we must dismiss all three of Hein's fiduciary duties claims for another reason. Even assuming that all of Hein's allegations are true and that McNeil and the FDIC breached their fiduciary duties to the Plan, Hein cannot claim benefits to which he is not entitled. Because Hein was not entitled to the benefits in the first place, there is no causal link between the alleged breach of fiduciary duty by McNeil and the FDIC and the denial of benefits to Hein.

Hein attempts to counter this conclusion by finding a causal link between the denial of unreduced benefits and the Plan's underfunding. By McNeil's own admission, the decision to deny Hein's benefits was influenced by the fact that the Plan was underfunded. Letter from Burton McNeil, Plan Administrator to Anthony P. Terracciano, Chairman, President and CEO, First Fidelity (May 20, 1993); App. Vol. II at 282. Hein argues that the Plan's underfunding was caused by McNeil's failure to adequately supervise fund assets and that McNeil's decision to take the underfunding into consideration when denying Hein's appeal was a breach of fiduciary duty. Thus, Hein alleges, there is a link between McNeil's alleged breach of fiduciary duty and the denial of unreduced benefits.

The important question, however, is not whether McNeil would have granted Hein unreduced benefits if the Plan had been fully funded, but whether Hein is legally entitled to recover damages. Because Hein was not

---

**11.** *Mertens* does not necessarily bar all forms of monetary damages. The Eighth Circuit Court of Appeals has characterized some forms of monetary relief sought pursuant to ERISA § 502(a)(3) as restitution, so that such relief avoids the bar to monetary damages erected by *Mertens. Howe v. Varity Corp.,* 36 F.3d 746, 756 (8th Cir.1994), *aff'd,* —— U.S. ——, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). The Eighth Circuit restored to retirees benefits to which they were entitled and of which they had been deprived due to misrepre-

sentations by management. *Id.* While we need not decide whether to follow the Eighth Circuit, we do observe that, as noted, *supra,* Hein was not entitled to any benefits under the terms of the Plan, and there was no evidence of deceit by management in this case. Therefore, restitution would be inappropriate.

In any event, Hein has made no attempt to characterize as restitution the monetary damages he seeks.

entitled to unreduced benefits under the terms of the Plan, he cannot claim, when he is denied those benefits, that he is entitled to damages because Plan funds were mismanaged. Moreover, even if we were to assume that McNeil mismanaged the Plan and that but for this mismanagement the Plan would have made an exception and granted Hein unreduced benefits, even though he was not entitled to them, we do not establish that Hein has a legal right to the funds or a legal injury stemming from their denial. Such discretionary decisions, to grant benefits that are not otherwise owed, are not mandated by ERISA. ERISA neither creates pension plans nor "dictate[s] the benefits to be afforded once a decision is made to create one." *Dade*, 68 F.3d at 1561 (citing *Hlinka v. Bethlehem Steel Corp.*, 863 F.2d 279, 283 (3d Cir.1988)). We must abide by this fundamental principle.

Given our holding on Count I, Hein cannot prove that he suffered cognizable injury from the alleged breach of fiduciary duty or that McNeil breached a duty by failing to "provid[e] benefits to participants and their beneficiaries...." 29 U.S.C. § 1104(a)(1)(A)(i). McNeil was merely adhering to the express terms of the Plan document by refusing to make an exception.

We will dismiss Hein's fiduciary duties claims as a matter of law. Monetary damages are not available under ERISA § 404. Moreover, regardless of the adequacy of the Plan's administration, Hein was not entitled to the funds. These claims must fail.

## V.

We will reverse the judgment of the district court on Count I and vacate the order granting attorneys' fees to appellees. In addition, we have determined that Counts II through VI of the Heins' amended complaint must be dismissed. We will remand the case to the district court with instructions to grant judgment to appellants on all counts.