William W. ADAMS, et al., Plaintiffs

v.

BOWATER INCORPORATED,
et al., Defendants

No. CIV. 00–12–B–C.

United States District Court,
D. Maine.

Dec. 3, 2003.

Patrick N. McTeague, McTeague, Higbee, MacAdam, Case, Watson & Cohen, Topsham, ME, William T. Payne, Schwartz, Steinsapir, Dohrmann & Sommers LLP, Pittsburgh, PA, James W. Case, McTeague, Higbee, MacAdam, Case, Watson & Cohen, Topsham, ME, for Plaintiffs.

Daniel A. Pileggi, Roy, Beardsley, Williams & Granger, LLC, Ellsworth, ME, Thomas J. Piskorski, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Brian J. Hipp, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant Bowater, Inc.

## ORDER ADOPTING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE AND ISSUING DECLARATORY AND INJUNCTIVE RELIEF

GENE CARTER, Senior District Judge.

Plaintiffs originally filed this action in 2000 seeking declaratory and injunctive relief against Defendant Bowater Incorporated ("Bowater"), primarily for an alleged violation of section 204(g) of the Employee Retirement Income Security Act of 1974 ("ERISA"). The claims arose from Bowater's adoption of an amendment to the Bowater Incorporated Pension Plan for Certain Employees of Great Northern Paper, Inc. (the "Plan"), signed October 7, 1999, and retroactively effective as of August 13, 1999 (the "1999 Plan Amendment"), in connection with Bowater's sale of Great Northern Paper, Inc. ("GNP"), then a subsidiary of Bowater.[1] Upon an appeal from this Court's decision that Plaintiffs' claims were moot because of the 2000 and 2001 Plan Amendments, the Court of Appeals for the First Circuit vacated the dismissal and remanded the case for further proceedings. *Adams v. Bowater Inc.*, 313 F.3d 611 (1st Cir.2002). Before the Court now are Plaintiffs' and Defendants' motions for summary judgment. The Magistrate Judge has filed with the Court her Recommended Decision, in which she recommends that the Court deny Defendants' motion for summary judgment, grant Plaintiffs' motion for summary judgment, declare that Defendants' 1999 Plan Amendment violated ERISA section 204(g), and enjoin Defendants from again amending the Plan in a manner that will decrease, reduce, or eliminate accrued benefits. The Recommended Decision sets forth the relevant facts and procedural history of this case, and the Court will not repeat them here. Recommended Decision at 1–3 (Docket Item No. 137).

The Court has carefully reviewed the Recommended Decision of the Magistrate Judge, Defendants' Objections to the Magistrate Judge's May 30, 2003 Recommended Decision (Docket Item No. 138), 2003 WL 21262450, and Plaintiffs' Response to Defendants' Objections to Mag-

---

1. More specifically, Count I of the Second Amended and Supplemental Complaint seeks declaratory and injunctive relief regarding the 1999 Plan Amendment, which cut off Plaintiffs' credit for continuous service with GNP after the date of the sale for purposes of the Plan's early retirement options. Counts II and III set forth breach of fiduciary duty claims under ERISA and seek relief for a subset of Plaintiffs who allege that they elected less generous benefits because of the 1999 Plan Amendment. Bowater subsequently amended the Plan twice more, first on April 25, 2000, to nullify the effect of the 1999 Plan Amendment (the "2000 Plan Amendment") and then again on June 15, 2001, to permit participants who made disadvantageous elections due to the 1999 Plan Amendment to grow into greater benefits on account of their post-sale GNP employment and receive supplemental benefits as a result (the "2001 Plan Amendment").

istrate Judge's Recommended Decision (Docket Item No. 140), together with the record, and has made a *de novo* determination of all matters adjudicated by the Recommended Decision. The Court will adopt the Magistrate Judge's Recommended Decision, deny Defendants' motion, grant Plaintiffs' motion, and order appropriate declaratory and injunctive relief.

## I. Defendants' Objections with Respect to Mootness

On remand, Defendants again argued that Plaintiffs' claims are moot, and this time the Magistrate Judge disagreed. Defendants' objections to the Magistrate Judge's recommended ruling on the issue of mootness are two-fold.

### A. The Geair Declaration

█ First, Defendants object to the Magistrate Judge's rejection of a Declaration from Harry F. Geair, Bowater's Vice President, General Counsel, and Secretary, which purports to offer corporate assurances regarding future amendment of the Plan. The Magistrate Judge rejected this Declaration because it "does nothing more than recite the present intention of [Bowater's] current corporate officer with responsibility for this litigation." Recommended Decision at 4.

The Court looks to the Court of Appeals' decision for guidance on how to evaluate Defendants' renewed mootness argument. The Court of Appeals stated:

> Here, the likelihood of recurrence being very hard to estimate, several considerations work in favor of litigating this case to judgment. One—a predicate point but not the decisive consideration—is that Bowater has been persistently unwilling to either admit that its amendment was unlawful or to say that it will not be reintroduced. This refusal may make sense as a management decision to preserve all options—after all, the ERISA precedents may develop in Bowater's favor—but it suggests that

the possibility of recurrence is not wholly fanciful.

Of course, if the risk were merely that the company would change position next month, it might still appear to be extremely low and easy to brush aside. But this case concerns retirement benefits that are earned over a substantial period and can affect pay-outs that may occur many years into the future. The ability of workers to plan their careers, and their savings, is impaired by uncertainties as to what Bowater might do three, five, or even ten years from now. Further, the withdrawal of the amendment is not like the abandonment of plans to build a bridge or a dam: the amendment could be reintroduced without cost to Bowater at a moment's notice; again, imagine that a couple of favorable appellate decisions come down the pike next year.

Some uncertainties cannot be avoided. All kinds of threats to expected pensions can develop and expectations can often be disappointed. But here a specific threat has been posed and a substantial investment in litigation costs has been made to obtain an answer to it; plaintiffs had already briefed their summary judgment motion on the merits when count I was dismissed. All that plaintiffs have asked is the chance to put the matter completely to rest.

Finally, Bowater could easily have said on the record that it would not in the future reintroduce for Great Northern workers the substance of the challenged amendment. If this had been done without hesitation in the district court, this almost certainly would have persuaded us that the quarrel was moot. Yet, even at oral argument on this appeal, Bowater's counsel said he could not give such a commitment to the plaintiffs.

*Bowater,* 313 F.3d at 614. The Court of Appeals went on to say that a defendant is not always required to denounce its own conduct; rather, "[m]ootness turns primarily on future threats, not upon penance." *Id.* at 615. However, "[w]here a defendant is unwilling to give any assurance that the conduct will not be repeated, a natural suspicion is provoked that recurrence may well be a realistic possibility." *Id.* On the record then before it, the Court of Appeals concluded that Count I was not moot, but stated that "[o]n remand, we do not foreclose the possibility that defendants can make commitments so firm and effective as to preclude the need for litigation." [2] *Id.* The task before the Magistrate Judge, and now before this Court, is to determine whether the Geair Declaration sets forth commitments that are so firm and effective that litigation of Plaintiffs' claims is no longer necessary.

In his Declaration, Mr. Geair states, under penalty of perjury, that he possesses the authority to make binding representations on behalf of Bowater with respect to the Plan and, further, that "[u]nder no circumstances will Bowater adopt any Plan amendment or take any other action which would rescind the April 25, 2000 or June 25, 2001 Plan amendments." [3] Plaintiffs express concern about the strength of this Declaration: "It can be changed or withdrawn at will by Geair, Bowater's Board [of] Director [sic], by new owners if Bowater is sold or by operation of law in bankruptcy." Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment, and Reply in Further Support of Plaintiffs' Motion for Summary Judgment

at 8 (Docket Item No. 133). Bowater does not address Plaintiffs' concerns in its reply brief or in its objections to the Magistrate Judge's Recommended Decision, other than to state that the doctrine of judicial estoppel will preclude Bowater from taking a contrary position in subsequent litigation on the subject. However, Plaintiffs are looking for more than a sturdy foundation for their argumentation in a subsequent law suit—Plaintiffs do not want to have to come back to court to protect their pension benefits in the future.

Bowater has focused on the Court of Appeals' indication that a statement on the record before this Court "almost certainly" would have been sufficient to render Plaintiffs' Count I moot. *Bowater,* 313 F.3d at 614. However, the Court believes that the Court of Appeals used the phrase "without hesitation" purposefully in that same sentence of its opinion and concludes that a statement on the record by Mr. Geair, at the invitation of the Court of Appeals following three years of vigorous litigation, does not automatically render this case moot. Because Defendants have offered no answers to Plaintiffs' concerns about the Geair Declaration, the Court is not persuaded that the commitments contained in the Declaration are "so firm and effective as to preclude the need for litigation." Accordingly, the Geair Declaration does not render Count I moot.

Defendants also object to the Magistrate Judge's treatment of Counts II and III, which allege breaches of fiduciary duty, and argue that these counts are moot even if Count I is not moot. Focusing on the Court of Appeals' statement that it "seems

---

**2.** The Court of Appeals declined to rule on the mootness of Counts II and III, indicating that "it is hard to tell from the filings below or the briefs on appeal whether there is anything live about counts II and III except so far as the plaintiffs there seek the same declaration as the plaintiffs in count I. This, we think, can

be sorted out on remand." *Bowater,* 313 F.3d at 615.

**3.** Plaintiffs note that the Declaration appears to include a typographical error because the 2001 Plan Amendment was dated June 15, 2001, not June 25, 2001, as set forth in the Declaration.

scarcely conceivable" that Bowater will argue that the elections made by these Plaintiffs after the 1999 Plan Amendment are still binding, Defendants assert that the Count II and III Plaintiffs have no current grievance. *Bowater*, 313 F.3d at 615. However, these Plaintiffs are relying on the 2001 Plan Amendment to put them in the position that they would have occupied but for their prior elections and earlier distributions, primarily through a new provision of the Plan that permits subsequent supplemental distributions upon attainment of age 55 and completion of 15, 28, 29, and 30 years of continuous service. Plaintiffs now seek assurances that the 2001 Plan Amendment will not be disturbed, and they argue that Bowater has not offered any firm and effective commitment to this effect. Because the Court is not persuaded that the Geair Declaration provides such a commitment or that it is absolutely clear that the 2001 Plan Amendment cannot reasonably be expected to be repealed or otherwise superceded, the Court concludes that, like Count I, Counts II and III are not moot.

### B. GNP's Bankruptcy and Asset Sale

■ Defendants' second objection regarding mootness stems from new information introduced by Defendants at the objection stage regarding GNP's bankruptcy and subsequent asset sale and their effects on Plaintiffs' employment and Plan participation.[4] The parties generally agree that GNP filed for bankruptcy on January 9, 2003, that GNP's assets were sold on or about April 28, 2003, and that Plaintiffs' employment with GNP has been terminated.[5]

Defendants argue that these facts render Plaintiffs' claims moot because they can no longer earn future "continuous service" with GNP. Plaintiffs argue that their claims are not moot because their numbers include many Plan participants who are not yet eligible to receive distributions of their accrued benefits from the Plan and thus remain at Bowater's mercy with respect to their accrued benefits under the Plan, including the crediting of their GNP continuous service after the date of Bowater's sale of GNP. Plaintiffs indicate that 494 of the remaining 549 Plaintiffs have not yet reached age 55 and that the youngest will not do so until 2024.[6] Affidavit of Dorothy M. McPherson ¶ 12, Exhibit 5 to Plaintiffs' Motion and Memorandum to Strike (Docket Item No. 141). According to Plaintiffs, they cannot take their distri-

---

4. Defendants ask the Court to consider this new evidence and its effect on the issues presented in the case pursuant to its discretion under Fed.R.Civ.P. 72(b). It is unclear why Defendants did not introduce this information to the Magistrate Judge, as the GNP asset sale occurred on or about April 28, 2003, and the Magistrate Judge did not issue her Recommended Decision until May 30, 2003. Understandably, Plaintiffs are offended by this failure and urge the Court to disregard the evidence. However, the Court will consider this information (and Plaintiffs' responses thereto) as part of its review of the Recommended Decision because it implicates the issue of the Court's subject matter jurisdiction. *See Choeum v. Immigration and Naturalization Service*, 129 F.3d 29, 32 (1st Cir. 1997) (parties may not waive issues of subject matter jurisdiction).

5. In support of their arguments against mootness, Plaintiffs assert that they are entitled to twelve additional months of service from the date(s) of their terminations of employment. While Defendants seem to agree that such service should be credited, Plaintiffs assert that the service is not being credited in practice. The Court finds it unnecessary to resolve this issue (which is not before the Court as part of the Second Amended Complaint) at this time because the Court finds Plaintiffs' claims are not moot on other grounds.

6. The record does not indicate how many of these Plaintiffs will be able to satisfy the service requirement of one of the Plan's early retirement options.

butions from the Plan until they attain age 55, and Plaintiffs want assurance that their service with GNP will not be disregarded by some corporate action of Bowater prior to their attainment of age 55.[7] While it appears that Plaintiffs can no longer earn additional service, they are still very interested in ensuring that the post-sale GNP service that they have earned is taken into account in determining their future eligibility for the Plan's early retirement benefits and that, if applicable, the supplemental distributions are available to them. Accordingly, they continue to have concerns about the stability of the 2000 Plan Amendment.

While the Count II and III Plaintiffs had already attained age 55 at the time of Bowater's sale of GNP, it is not clear on the record before this Court that they all have applied for any applicable supplemental distributions authorized under the 2001 Plan Amendment. Therefore, the Court believes that they have an interest in ensuring that the 2001 Plan Amendment stays in place until all such supplemental benefits have been applied for and received.

In a case such as this, where a defendant has voluntarily ceased the allegedly unlawful conduct, the Court of Appeals instructs that "[t]he Supreme Court has said that such a case is moot only if the defendant meets his 'heavy burden' of persuading the court that it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Bowater*, 313 F.3d at 613 (citations omitted). Given the Court's rejection of the Geair Declaration as the basis for

reaching such a conclusion, the Court finds that Defendants have not met their burden of showing that Plaintiffs' claims are moot. This is true even though Plaintiffs are now unable to earn future continuous service with GNP. Therefore, the Court concludes that none of the claims in this case are mooted by subsequent events with respect to Plaintiffs' employment with GNP.

## II. Defendants' Objections with Respect to ERISA section 204(g)

■ According to the Magistrate Judge, the "question presented by this case is whether [the 1999 Plan Amendment] violated ERISA § 204(g)(1) where the Plan Amendment purported to prohibit Plaintiff participants from using continued service with GNP to 'grow into' certain retirement benefits."[8] Recommended Decision at 4. She answered the question in the affirmative and recommended that the Court issue declaratory and injunctive relief in favor of Plaintiffs. Defendants disagree with this conclusion and urge the Court to view the question differently. They insist that the proper question before the Court is whether ERISA section 204(g) requires an employer to credit service for employment with an unrelated entity (*i.e.*, an entity that is not a member of the employer's "controlled group" as that term is used in ERISA) for purposes of its own retirement plan. The Court agrees with the Magistrate Judge, both with respect to the framing of the question at hand and as to the conclusion she reached.

Plaintiffs do not argue that GNP remained related to Bowater (or part of Bo-

---

7. Defendants do not assert that a Plan participant must attain age 55 while employed by GNP to be eligible for the various early retirement options.

8. Defendants assert that the Magistrate Judge misunderstood the issue because she occa-

sionally used the term "age into" rather than "grow into" in her Recommended Decision. The Court is confident that the Magistrate Judge was analyzing the issue properly, because she consistently discussed the issue in the context of credit for service rather than attainment of a particular age.

water's controlled group) after the sale, and it is true that Plaintiffs have not provided authority for the proposition that an employer must credit service for employment with an unrelated entity absent affirmative plan language requiring that such credit be given. However, Defendants misstate Plaintiffs' burden under their 204(g) claim. Plaintiffs must show this Court that the Plan has been amended in a manner that eliminates or reduces an early retirement benefit with respect to benefits attributable to service before the amendment, and they have done so. Absent the 1999 Plan Amendment, the Plan was drafted to count continuous service with GNP after the sale, and Bowater had to amend the Plan to cut off credit for the post-sale GNP service and prevent participants from growing into the Plan's early retirement options with respect to benefits accrued prior to the sale. This amendment violated ERISA section 204(g).

In support of their argument, Defendants continue to cite two cases, *Dade v. North American Philips Corp.*, 68 F.3d 1558 (3d Cir.1995) and *Andes v. Ford Motor Co.*, 70 F.3d 1332 (D.C.Cir.1995), for the proposition that Bowater was not required to credit Plaintiffs with GNP continuous service after the sale. However, the Magistrate Judge correctly points out that these cases do not involve plan amendments. In each case, the plan in question was drafted to count service with specific entities, and the plaintiffs no longer were employed by an entity that qualified under the plan following the completion of the transaction. It was the transaction itself that changed the plaintiffs' employment to service that was ineligible under the plan, not a plan amend-

ment, and no 204(g) violation was found. Here, Bowater's sale of GNP did not, in and of itself, make Plaintiffs' post-sale service with GNP ineligible under the Plan—it required an amendment to do so.[9] The plain language of ERISA section 204(g) prohibits a plan from being amended to eliminate or reduce an early retirement benefit with respect to benefits attributable to service before the amendment, and that is precisely what Bowater did when it adopted the 1999 Plan Amendment.

Accordingly, the Court **ADOPTS** the Recommended Decision of the Magistrate Judge and **ORDERS** that Defendants' Motion for Summary Judgment be, and it is hereby, **DENIED** and that Plaintiffs' Motion for Summary Judgment be, and it is hereby, **GRANTED**. Further, the Court:

(1) **DECLARES** that the 1999 Plan Amendment violated ERISA section 204(g); and

(2) **ENJOINS** Defendants from amending, withdrawing or altering either the 2000 Plan Amendment or the 2001 Plan Amendment.

---

**9.** The Court recognizes that this would be a very different case if Plaintiffs had been employed by an unrelated entity other than GNP after the sale. In that event, Plaintiffs' post-sale employment would not have been service with GNP and would not have qualified as continuous service under pre-sale terms of the Plan. Because in that case an amendment would have been unnecessary to reach Bowater's desired result, Plaintiffs would have found themselves similarly situated to the *Andes* and *Dade* plaintiffs.