**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3348
_____

STANLEY PIESESKI; PATRICK KOST,

Appellants

v.

NORTHROP GRUMMAN CORPORATION; NORTHROP GRUMMAN
ELECTRONIC SENSORS & SYSTEMS DIVISION PENSION PLAN


NORTHROP GRUMMAN CORPORATION

v.

CBS, INC., formerly known as
VIACOM, INC., successor by merger to CBS Inc.,
f/k/a WESTINGHOUSE ELECTRIC CORPORATION.

Third Party Defendants
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 2-01-cv-00993)
District Judge: Honorable Terrence V. McVerry
_____

Submitted Under Third Circuit LAR 34.1(a)
May 16, 2013
_____

Before: SMITH, FISHER, and SHWARTZ, <u>Circuit Judges</u>

(Opinion Filed: May 23, 2013)

_____

OPINION
_____

SHWARTZ, <u>Circuit Judge</u>.

## I. INTRODUCTION

Plaintiffs Stanley Pieseski and Patrick Kost, on behalf of themselves and similarly situated former employees of Northrop Grumman Corporation ("Northrop Grumman"), brought suit alleging Defendants Northrop Grumman and Northrop Grumman Electronic Sensors & Systems Division Pension Plan (the "Northrop Grumman Plan") failed to provide job separation benefits in violation of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Plaintiffs argue that the District Court erred in entering summary judgment against Plaintiffs and in favor of Defendants. For the reasons set forth below, we will affirm.

As we write principally for the benefit of the parties, we recite only the essential facts and procedural history.[1] Plaintiffs were long-time employees of Westinghouse Electric Corporation ("Westinghouse") and participants in Westinghouse's pension plan (the "Westinghouse Plan") until they became Northrop Grumman employees. Northrop Grumman purchased certain assets from Westinghouse pursuant to the terms of a January 3, 1996 Asset Purchase Agreement (the "APA"). Among other things, the APA provided

_____

[1] In accordance with our standard of review, <u>see</u> <u>infra</u> Section II, we set forth the facts in the light most favorable to Plaintiffs. <u>Skerski v. Time Warner Cable Co.</u>, 257 F.3d 273, 278 (3d Cir. 2001).

that certain employees of Westinghouse's Electronic Sensors & Systems Division

("ESSD"), including Plaintiffs, would become Northrop Grumman employees. Northrop

Grumman established a successor pension plan to the Westinghouse Plan for the benefit

of these employees and Plaintiffs became participants in the Northrop Grumman Plan.

Plaintiffs continued to work for Northrop Grumman until 1999, when they were

both laid off through no fault of their own but rather for reasons associated with Northrop

Grumman's business. After their layoff, Plaintiffs sought certain permanent job

separation benefits ("PJS Benefits") to which they contend they were entitled under the

Northrop Grumman Plan, but Defendants refused to award these benefits. Plaintiffs

assert that Northrop Grumman's refusal to provide PJS Benefits violated ERISA section

204(g), ERISA's "anti-cutback provision," codified at 29 U.S.C. § 1054(g),[2] and

---

[2] Section 204(g) in pertinent part provides:

(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . .
(2) For purposes of paragraph (1), a plan amendment which has the effect of—
      (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
      (B) eliminating an optional form of benefit,
with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy.

29 U.S.C. § 1054(g).

breached its fiduciary duty with respect to the Northrop Grumman Plan pursuant to 29 U.S.C. § 1104(a).

The issue here is whether Plaintiffs were entitled to PJS Benefits after they transferred from the Westinghouse Plan to the Northrop Grumman Plan. Under the Westinghouse Plan, eligible employees were entitled to PJS Benefits after a specifically-defined permanent job separation had occurred. The Westinghouse Plan defined the term "Permanent Job Separation" as "the termination of the employment of an Employee with an Employer, Affiliated Entity, or Excluded Unit through no fault of his own for lack of work for reasons associated with the business for whom such Employer, Affiliated Entity, or Excluded Unit determines . . . there is no reasonable expectation of recall." App. 132. The terms "Employer" and "Affiliated Entity" encompass Westinghouse, its subsidiaries, and its joint ventures. The term "Excluded Unit" refers to a limited group of Westinghouse employees excluded from the Plan.

Before Northrop Grumman's purchase, an amendment to the Westinghouse Plan first narrowed and then, effective September 1, 1998, eliminated the PJS Benefits from the Westinghouse Plan. This Court found that amendment, otherwise known as the "Sunset Amendment," violated section 204(g) in Bellas v. CBS, Inc., 221 F.3d 517 (3d Cir. 2000). Because the Northrop Grumman Plan, as the successor to the Westinghouse Plan, carried forward the same amendment narrowing and eliminating the PJS Benefits

4

ruled illegal in <u>Bellas</u>, Plaintiffs allege in this action that the Northrop Grumman Plan narrowed and eliminated the PJS Benefits and that doing so was, as in <u>Bellas</u>, illegal.

Although the District Court initially granted Plaintiffs' motion for partial summary judgment and certified a class of former Westinghouse Plan participants, the District Court later reconsidered this decision in light of <u>Shaver v. Siemens Corp.</u>, 670 F.3d 462 (3d Cir. 2012), and entered judgment in favor of Defendants. This appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction in this case pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) and (f). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review on an appeal from summary judgment, applying the same standard as the District Court. <u>See</u> <u>Tri-M Group, LLC v. Sharp</u>, 638 F.3d 406, 415 (3d Cir. 2011). When considering a motion for summary judgment, we "must draw all reasonable inferences from the underlying facts in the light most favorable to the non-moving party." <u>Skerski</u>, 257 F.3d at 278 (citation omitted). We will affirm an order for summary judgment only if "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." <u>Ruehl v. Viacom, Inc.</u>, 500 F.3d 375, 380 n.6 (3d Cir. 2007) (internal quotation marks and citation omitted).

## III. DISCUSSION

In <u>Shaver</u>, this Court reversed the district court's ruling in a very similar case, where Siemens was alleged to have violated ERISA section 204(g) when it failed to

5

provide PJS Benefits to a class of former Westinghouse employees Siemens had hired

following an asset purchase from Westinghouse. This Court concluded that: (1) the

Westinghouse Plan explicitly denied PJS Benefits to former Westinghouse employees

who were hired by a successor employer, Shaver, 670 F.3d at 488-92; and (2) Siemens

did not contractually obligate itself in its asset purchase agreement to provide PJS

Benefits to those former Westinghouse employees. Id. at 492-97. The same conclusions

apply here.

### A. Northrop Grumman's Obligations Under the Westinghouse Plan

While Plaintiffs try to distinguish this case from Shaver by pointing to the fact that

the Northrop Grumman Plan, unlike the Siemens plan, is called a "successor" and

"continuation" of the Westinghouse Plan in its plan document, the same Westinghouse

Plan provision denying PJS Benefits to employees hired by a successor employer is

present here. In the section detailing the PJS Benefits, the Westinghouse Plan explicitly

stated that a permanent job separation occurs if there is a termination with an "Employer,

Affiliated Entity, or Excluded Unit," app. 132, and "in no event shall a Permanent Job

Separation occur if an Employee is offered continued employment by . . . a successor

employer which is neither an Employer, Affiliated Entity, nor an Excluded Unit." App.

133. Northrop Grumman was not an Employer, Affiliated Entity or Excluded Unit under

the Westinghouse Plan. Moreover, Plaintiffs were "offered continued employment" with

Northrop Grumman pursuant to the APA. Thus, Plaintiffs did not have a permanent job

6

separation from Westinghouse as defined by the Westinghouse Plan. Because Westinghouse only provided PJS Benefits to employees who were permanently separated from Westinghouse, and Plaintiffs' employment with successor Northrop Grumman excluded them from this category of employees, they were not entitled to PJS Benefits under the Westinghouse Plan. Cf. Shaver, 670 F.3d at 487-88. Put differently, once Plaintiffs were offered employment by Northrop Grumman, they were "forever disqualified" from receiving PJS Benefits under the "successor employer" provision of the Westinghouse Plan. Id. at 490. Because Plaintiffs were not entitled to PJS Benefits under the Westinghouse Plan as a result of their immediate employment with Northrop Grumman, they suffered no "cutback" of a benefit.[3] Id. at 486, 488 (section 204(g) "cannot create an entitlement to benefits when no entitlement exists under the terms of

---

[3] Plaintiffs' argument that a successor employer like Northrop Grumman who sponsors a spin-off plan "steps into the shoes" of and should be treated as the original employer (i.e., Westinghouse) and their reliance on IRS General Counsel Memorandum ("GCM") 39824, 1990 WL 698027, as well as this Court's analysis of the GCM in Dade v. North American Philips Corp., 68 F.3d 1558, 1563 (3d Cir. 1995), do not change the result. The IRS GCM simply notifies a successor employer who takes over a plan in a spin-off that it is liable to the same extent as the predecessor for any plan amendments adopted by the predecessor that purport to cut accrued benefits in violation of section 204(g). There is no dispute that a successor employer can be liable for ERISA violations stemming from the plan and amendments that it inherits, but determining this liability requires an analysis of the terms of the plan itself. For the reasons just stated, the Westinghouse Plan obligations and liabilities that Northrop Grumman inherited did not include providing employees, like Plaintiffs, PJS Benefits when the employees did not satisfy the plan requirements to obtain them. Hence, Northrop Grumman cannot be liable under ERISA section 204(g) for failing to provide PJS Benefits to Plaintiffs pursuant to the Westinghouse Plan.

7

the [p]lan . . .. In sum, we find that section 204(g) does not protect from cutback an early retirement benefit for a plan participant who has not satisfied and never can satisfy the conditions for receiving the benefits that are subject to cutback.") (citation omitted).

## B. Northrop Grumman's Obligations Under the APA and its Plan

Plaintiffs also have no contractual basis to obtain such benefits from the Northrop Grumman Plan. The terms of the APA govern Northrop Grumman's obligation to provide the PJS Benefits. The APA required only that Northrop Grumman provide benefits comparable to the Westinghouse benefits in effect on the date of the APA. Northrop Grumman did just that, incorporating all provisions of the Westinghouse Plan, including the section on PJS Benefits for qualifying former Westinghouse employees. From its inception, the Northrop Grumman Plan provided PJS Benefits for qualifying Northrop Grumman employees who sustained a permanent job separation on or before August 31, 1998. Consequently, although the Northrop Grumman Plan contained a sunset provision that eliminated PJS Benefits for employees laid off after August 31, 1998, that provision was present from the Northrop Grumman Plan's inception, and it therefore did not function as an amendment that later reduced an existing benefit.[4] Thus, Northrop Grumman's decision not to award PJS Benefits to Plaintiffs under the Northrop

---

[4] The ruling in <u>Bellas</u> does not change the outcome of this case. <u>Bellas</u> involved a lawsuit by Westinghouse employees against Westinghouse over the illegality of the Sunset Amendment and involved no successor employer. 221 F.3d at 519-21. Unlike the situation in <u>Bellas</u>, Northrop Grumman did not make an amendment to previously-accrued PJS Benefits.

8

Grumman Plan was not a "cutback" in violation of 204(g). Because the Northrop Grumman Plan always and only provided PJS Benefits to employees who sustained a permanent job separation before September 1, 1998 and Plaintiffs were laid off after that date, they did not qualify to receive PJS Benefits from Northrop Grumman.

For these reasons, Plaintiffs fail to demonstrate a violation of section 204(g). Because Plaintiffs' breach of fiduciary duty claim is derivative of their section 204(g) claim, Plaintiffs' failure to demonstrate a violation of section 204(g) dooms their claim for breach of fiduciary duty.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of Defendants.[5]

---

[5] Because we are affirming the grant of summary judgment in Defendants' favor, and hence Plaintiffs are entitled to no PJS Benefits, Plaintiffs' appeal of the District Court decision concerning remedies is moot.